| UNITED STATES DISTRICT COURT | C/M |
| EASTERN DISTRICT OF NEW YORK | |

---------------------------------------------------------- X
                                                           :
DANIEL RODRIGUEZ,                                          :
                         Petitioner,                       :
                                                           :  **MEMORANDUM**
              - against -                                  :  **DECISION AND ORDER**
                                                           :
SUPERINTENDENT H. GRAHAM,                                  :  17 Civ. 3395 (BMC)
                                                           :
                         Respondent.                       :
---------------------------------------------------------- X

**COGAN**, District Judge.

    Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his conviction for second degree murder, first degree assault, and second degree assault. The facts will be set forth below as they pertain to each of plaintiff's points of error, but to summarize, petitioner, seeking revenge against or protection from his girlfriend and her new boyfriend, enlisted two friends to help him burn down the building in which petitioner's girlfriend lived. Petitioner went to a laundromat and bought a laundry bag. Then, he and an accomplice, Devone Sanders, together with another individual, Jose Echevarria, bought a full gasoline can and put it in the laundry bag. Following directions given by petitioner, Sanders started the fire. One person died and two were injured, one seriously.

    Petitioner's four points of error are the following: (1) the trial court, having suppressed the second of three statements that petitioner gave to police and the District Attorney, should have suppressed the third as well, rather than holding that the time period between the second and third confession was sufficient to attenuate the improper questioning that led to the second, suppressed confession; (2) the trial court, in its Sandoval ruling, improperly weighed the limitations on cross examining Sanders about his prior convictions when it determined which

prior convictions petitioner could be cross examined on if petitioner testified; (3) the trial court improperly rejected a missing witness charge; and (4) his trial counsel was ineffective for not seeking to redact portions of petitioner's videotaped confession and precluding the prosecutor from cross examining him as to those portions of the confession that should have been redacted.

The Appellate Division accepted the first point as error, but held the error to be harmless. Thus, I construe petitioner's argument here as a challenge to the Appellate Division's harmless error ruling, and I reject his challenge under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). I further hold that petitioner's second point of error is procedurally barred. Finally, the third and fourth points of error fail on the merits under the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Accordingly, the petition is denied.

**I.      Suppression of Petitioner's Statement**

    **A.  Background**

        *1. Statements Petitioner Did Not Challenge*

On his arrest, the police provided petitioner with his Miranda warnings. Petitioner waived his rights and proceeded to answer questions for about 25 minutes (the "first statement"). He acknowledged that he had purchased a laundry bag, but he denied committing the arson. The investigating detective asked petitioner if he had been at the JFK Inn that evening, and petitioner said he had not. Petitioner said that on the night in question, he had driven around with his two friends, Echevarria and Sanders (both of whom, apparently unbeknownst to petitioner, had already given full statements to the police implicating themselves and petitioner in the arson) all night long.

After a ten-minute break, the investigating detective told petitioner that the police had a videotape of petitioner at the JFK Inn on the evening in question. At that point, petitioner changed his story to acknowledge that he had gone to the JFK Inn to sell a gun and that Echevarria and Sanders had gone with him as backup. He then said that he had not disclosed this gun sale when first asked because he did not want to implicate his friends in the gun sale. Petitioner then attempted to blame the arson on Sanders while continuing to deny his involvement. Petitioner said he assumed Sanders had taken the laundry bag from the back of petitioner's car. Petitioner also admitted having learned that his girlfriend was cheating on him with an individual named AJ, and that he believed that his girlfriend had enlisted AJ to rob or kill him.

The interrogation resumed about one hour later, at which point the detectives informed petitioner that they had additional evidence suggesting that he had been in the vicinity of the fire. Petitioner responded that he had neither entered the building nor set the fire, but he admitted that on the evening in question, he, Echevarria, and Sanders had driven to his girlfriend's house, where they saw AJ enter and leave. Petitioner said that he and his accomplices attempted to follow AJ in his car and that they had discussed how to get revenge on AJ. Petitioner told the detectives that he had suggested burning AJ's car, but Sanders had proposed burning the girlfriend's house.

Petitioner further acknowledged buying a gasoline container and the laundry bag. He also stated that the three of them had stopped at a gas station and filled the container. The three men then drove back to the girlfriend's house, and Sanders got out of the car with the laundry bag containing the gasoline can. Petitioner told the detectives that he thought that Sanders would

burn AJ's car and drove away briefly, but when he returned to pick Sanders up, he saw that the building was on fire.

Petitioner agreed to repeat this version of the story on videotape to an Assistant District Attorney ("ADA"). The ADA did not arrive for several hours. The ADA reissued the <u>Miranda</u> warnings at the start of the videotaped interview (the "first video"), and petitioner initially waived his rights, but he then invoked them after a few questions.

### 2. *Statements Petitioner Did Challenge*

Two and one-half hours later, the detectives, at the request of the ADA, showed petitioner the videotaped statement that Echevarria had given, which implicated petitioner in the arson. The detectives did not re-<u>Mirandize</u> petitioner. Petitioner then admitted that he knew that Sanders was going to burn his girlfriend's house, and he agreed to make another videotaped statement (the "second statement").

Two hours after that, petitioner was re-issued <u>Miranda</u> warnings and waived his rights. He then stated on video (the "second video") that AJ had tried to rob or kill him with his girlfriend's cooperation and that petitioner had been looking for AJ in an attempt to beat him. He maintained that he was surprised when he returned to the house and found that Sanders had started a fire. He admitted possession of a handgun, and he admitted that he had been "caught" in Pennsylvania with guns, cash jewelry, and false identification.

### 3. *State Court Determinations*

The prosecutor conceded that the second statement petitioner made to detectives immediately after viewing Echevarria's video confession had to be suppressed because the detectives had not re-issued the <u>Miranda</u> warnings. The only remaining issue at the suppression hearing, therefore, was whether the second video should also be suppressed, since it had been

4

preceded by re-issued Miranda warnings. The trial court denied the motion, ruling that the lapse of time between the suppressed statement and the second video was sufficient to attenuate the improperly-obtained statements from the properly-obtained statements.

The Appellate Division disagreed. In a reasoned decision, it held that the improperly-obtained and properly-obtained statements "were part of a single continuous chain of events" and that petitioner "was never returned to the status of one who was not under the influence of questioning." People v. Rodriguez, 132 A.D.3d 781, 783, 17 N.Y.S.3d 753, 755 (2d Dep't 2015), leave to app. denied, 27 N.Y.3d 968, 36 N.Y.S.3d 629 (2016). However, the appellate court also found that the error was harmless: "[T]he People presented overwhelming proof of the defendant's guilt, including the defendant's prior untainted statements, his codefendant's trial testimony, and two surveillance videos corroborating the codefendant's account of the crimes. There is no reasonable possibility that the admission of the second videotaped statement affected the verdict." 132 A.D.3d at 784, 17 N.Y.S.3d at 756.

### B. Analysis

The Supreme Court has outlined the standard for federal habeas corpus review of state court findings of harmless error in Brecht, Fry v. Pliler, 551 U.S. 112 (2007), and, most recently, in Davis v. Ayala, 135 S. Ct. 2187 (2015). This standard subsumes the deferential review standard applicable under the AEDPA. When a federal court reviews a state court finding of harmless error beyond a reasonable doubt under the AEDPA, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." Fry, 551 U.S. at 119. And a state-court decision is not unreasonable if "'fairminded jurists could disagree' on the correctness of that decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

5

Thus, it is not enough to afford relief in this situation if the federal habeas court merely finds a "reasonable possibility" that the error was harmful. Davis, 135 S. Ct. at 2198. Rather, relief is only available "if the federal court has 'grave doubt about whether a trial error of federal law had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 2198 (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)). This conclusion, in turn, must be supported by a finding that the petitioner "was actually prejudiced by the error." Id. (quoting Calderon v. Coleman, 525 U.S. 141, 146 (1998) (*per curiam*)).

Having reviewed this record, I do not have any grave doubt that the admission of the second video was harmless. First, petitioner's first statement, which was not challenged, contained many of the same admissions that are in the second video. In the first statement, petitioner admitted that (1) he purchased the laundry bag that Sanders used to carry the accelerant – in fact, the inference was unavoidable that he purchased that laundry bag for the sole purpose of transporting the accelerant; (2) he was with Sanders and Echevarria all night long on the night of the arson, although he only said he "drove around" with them; (3) he lied to the police about being at the JFK Inn with Sanders and Echevarria, first saying he was not there and then saying he was, ultimately offering an unconvincing story about being there to sell a gun (which never happened); (4) he believed that his girlfriend was cheating on him with AJ and that AJ was trying to rob or kill him; (5) he drove to his girlfriend's house that evening with Sanders and Echevarria; (6) he bought the gasoline with Sanders and Echevarria; and (7) he saw AJ leave his girlfriend's house, attempted to follow him, and discussed burning AJ's car and the girlfriend's house with Sanders and Echevarria.

Beyond petitioner's first statement, the other evidence was extensive. The forensic evidence left no doubt that this was an arson; it was not even disputed. Sanders became a

cooperating witness and gave detailed testimony at trial of everything that happened, fully implicating petitioner. Sanders's testimony was abundantly corroborated. There was a video of petitioner buying the laundry bag, which investigators recovered and which had distinctive markings. Investigators also recovered the gasoline can from the site. Although investigators could not confirm that petitioner's DNA was on the recovered gas can and laundry bag, they were unable to exclude either him or Sanders as possible contributors. Further, there was a video of petitioner, Sanders, and Echevarria at the JFK Inn after the fire.

In competition with this evidence was petitioner's testimony during the trial, in which he maintained that he never planned to burn AJ's car or his girlfriend's house, and that he had bought the laundry bag because Sanders wanted it but had no money to buy it himself. He also testified that he was "upset" with AJ because AJ had cut Echevarria's face. He also admitted to paying for the gasoline can and the gasoline used to fill it, but he maintained that he had done that to "calm the situation down." He further admitted that he knew that, when he was driving Sanders to his girlfriend's house, Sanders intended to burn something. He also admitted that he knew his girlfriend was having a relationship with AJ and that in the weeks before the arson, he had referred to AJ in a text to his girlfriend as "that n-----." He also acknowledged that he had asked his girlfriend to resume their relationship and that she refused to let him see their children after he threatened that he would not "give them back" when he had the children. Finally, petitioner also testified that he had made his admissions to the police because he was tired and sick, that he thought that he would go free if he gave the statements, and that the police would take his children away if he did not make the statements.

The second video added very little, if anything, to this mix. Therefore, I reject, as did the Appellate Division, petitioner's argument that his "videotaped admission that the men discussed

burning the building was particularly damaging *even though [petitioner's] videotaped statement and his oral statements both covered his activities on the night of the incident and his relationships with [his girlfriend] and AJ*." (emphasis added). The italicized language is the point – petitioner had already given admissible statements that largely overlapped with his statements in the second video. In all significant respects, the second video merely confirmed the final version of petitioner's first statement to the police. Most importantly, petitioner maintained his view that Sanders was the culprit and that he did not know that Sanders was planning to burn his girlfriend's house.

To some extent, the second video was corroborative of the testimony that petitioner himself gave at trial. Any marginal differences between the petitioner's admissible statements and the improperly-admitted second video are too small to support a finding under Brecht that the Appellate Division unconstitutionally applied the harmless-error rule.

**II.     *Sandoval* Ruling**

In determining which of plaintiff's prior convictions could be used to impeach him if he chose to testify at trial, the trial court took into account which of Sanders's prior convictions could be used to impeach Sanders. The transcript contains typographical errors but it appears that the trial court was attempting, or at least considering, making consistent rulings with regard to the prior convictions of Sanders and petitioner, stating that it wanted to consider the "balance" between the two of them. Petitioner's counsel made no objection to the consideration of which of Sanders's prior convictions petitioner could use to impeach Sanders as part of the inquiry into which of petitioner's prior convictions the prosecution could use to impeach petitioner. The trial court, in any event, did not expressly reference this consideration in its ruling, holding only that "after balancing the right of the People to adequately cross-examine a defendant with the right of

8

the defendant to take the stand and not have voluminous criminal records used to show propensity to commit the crime," the prosecution could impeach petitioner with a prior burglary conviction, but not a youthful offender adjudication.

The Appellate Division affirmed, holding summarily that petitioner's "contention regarding the Supreme Court's Sandoval ruling is unpreserved for appellate review and, in any event, is without merit." Rodriguez, 132 A.D.3d at 784, 17 N.Y.S.3d at 756 (internal citations omitted).

The Appellate Division's holding that this claim was "unpreserved for appellate review" erects a procedural bar prohibiting review in this Court. A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Murden, 497 F.3d at 193 (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)).

Further, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative*

holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). This rule has been interpreted by the New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 739 (1995); see also People v. Hicks, 6 N.Y.3d 737, 810 N.Y.S.2d 396 (2005).

The application of a procedural bar in this case is straightforward – the first state court that had the opportunity to consider this argument was the Appellate Division. If petitioner's trial counsel had made this "apples and oranges" argument (*i.e.*, considering Sanders's prior convictions in conjunction with petitioner's prior convictions) to the trial court, the trial court might well have been persuaded that it should not consider Sanders's rap sheet in determining the Sandoval issue. But no one told the trial court that it was doing anything objectionable. The fact that defendants usually have a different lawyer on appeal does not constitute grounds for

second-guessing trial court rulings by raising arguments on appeal that were not raised before the trial court. Petitioner's claim is therefore procedurally barred.

Once it is determined that a claim is procedurally barred under state procedural rules, however, a federal court may still review such a claim on the merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray, 477 U.S. at 488) (alteration in original). Although, in some circumstances, ineffective assistance of counsel may constitute "cause" sufficient to avoid a procedural default, id. at 488-89, the ineffective assistance claim must itself have been exhausted in the state court, Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982).

Although petitioner raised an ineffective assistance of trial counsel claim on appeal and seeks relief for that claim in this habeas corpus proceeding (see below), he never contended that his trial counsel was ineffective for not challenging the trial court's reference to Sanders's prior

convictions as part of its Sandoval inquiry. As there is no other ground for relief from the procedural bar, I decline to consider petitioner's Sandoval claim.

## III.     Missing Witness Charge

Petitioner's trial counsel requested a missing witness charge based on the prosecution's failure to call AJ to testify. His counsel proffered that AJ would testify that he was not having an affair with petitioner's girlfriend. The trial court denied the request, and the Appellate Division affirmed that ruling on the ground that "the testimony of the uncalled witness would have been merely cumulative." Rodriguez, 132 A.D.3d at 784, 17 N.Y.S.3d at 756.

Since the Appellate Division rejected this claim on the merits, my review of that decision is guided by the AEDPA. AEDPA provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). Moreover, a state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has held that the AEDPA standard of review is extremely narrow and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal . . . ." Ryan v. Gonzales, 568 U.S.

57, 75 (2013) (quoting Harrington, 562 U.S. at 103). State court decisions must "'be given the benefit of the doubt,'" Felkner v. Jackson, 562 U.S. 594, 598 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 562 U.S. at 102. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, 567 U.S. 37 (2012).

"A missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose 'production . . . is peculiarly within [its] power.'" United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (quoting United States v. Mittelstaedt, 31 F.3d 1208, 1216 (2d Cir. 1994)). The Second Circuit has explained that, "[b]ecause we recognize that 'an aura of gamesmanship' frequently accompanies requests for missing witness charges, we afford [trial] judges considerable discretion in deciding when they should and should not be given." Gaskin, 364 F.3d at 463 (internal citations omitted). In addition, "[l]ike the failure to give any other jury instruction, the failure to issue a missing witness instruction does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" Klosin v. Conway, 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

13

Even if New York law would require a missing witness instruction, the omission does not necessarily mean that a petitioner is entitled to habeas corpus relief under AEDPA. See, e.g., Davis v. Smith, No. 9:06-CV-1389, 2009 WL 236506, at *7 (N.D.N.Y. Feb. 2, 2009) ("Even if state law had called for the missing witness charge, its absence certainly did not so infect the entire trial as to deny Petitioner due process where, as here, the prosecutor's comments during his opening statement were equivocal, defense counsel was permitted to comment on the absence of any eye-witness testimony during summation, and the jury was instructed to limit itself to the evidence actually presented."). "Where, as here, the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden . . . especially heavy.'" Crews v. Herbert, 586 F. Supp. 2d 108, 114 (W.D.N.Y. 2008) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

There is no Supreme Court authority requiring the giving of a missing witness instruction under any particular circumstances. The closest decision in the area may be Graves v. United States, 150 U.S. 118 (1893), where the Supreme Court reversed a conviction based on the prosecutor's comment during summation that the defendant had not brought his wife, who had been with him during the alleged crime, to the courtroom. In dictum, the Court stated that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Id. at 121. But even the dictum in Graves has nothing to do with charging a jury, only with permitting or not permitting an argument by counsel, and thus, as the late Judge Trager pointed out, "The Supreme Court did not articulate a constitutional right to a missing witness charge in Graves . . . ." Reyes v. Miller, No. 04-cv-3653, 2005 WL 3576841, at *4 (E.D.N.Y. Dec. 29, 2005). Judge Dearie has similarly held that "even if a missing witness

14

charge were appropriate, neither Graves, nor any other Supreme Court case, *requires* that it be given." Dell v. Ercole, No. 06-cv-1724, 2009 WL 605188, at *6 (E.D.N.Y. Mar. 6, 2009); see also Morales v. Strack, No. 03-MISC-0066, 2003 WL 21816963, at *4 (E.D.N.Y. July 3, 2003), aff'd, 116 F. App'x 293 (2d Cir. 2004) (finding "no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness").

The bottom line is that, like many non-structural challenges to trial decisions under the due process clause, habeas corpus relief is not warranted unless the failure to give the missing witness instruction "by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147.

As is often the case when this issue is raised in a state court trial, the attempt at gamesmanship is quite obvious here. Instead of raising the issue early enough for the prosecution to have secured AJ's presence if indeed he qualified as a missing witness, trial counsel waited until after not only the prosecutor had rested, but also after the defense had rested as well. With nothing left to do, as a practical matter, but charge the jury, trial counsel sought to trap the judge into either giving the instruction or risking error.

The strategy failed because, in fact, trial counsel's request met none of the requirements for a missing witness instruction under New York law. Even under defense counsel's proffer, AJ had no knowledge of the offense itself – he was not a witness to the crime and had no contact with petitioner or his accomplices in connection with the crime. Most fundamentally, trial counsel failed to demonstrate that the prosecution had any more access to AJ than trial counsel did. United States v. Caccia, 122 F.3d 136, 139 (2d Cir. 1997). Finally, regardless of what AJ might have said, the record was clear that petitioner's relationship with his girlfriend was tenuous, to put it mildly. Thus, even if AJ had appeared and testified that he was not having an

15

affair with petitioner's girlfriend, there is no reason why that would matter – the fact remained that petitioner, as he said in his properly admitted statements to the police, thought that AJ was in a relationship with his girlfriend.

Petitioner's tortured theory of the need for a missing witness instruction cannot give rise to the severe and egregious prejudice necessary to obtain relief under the AEDPA. This was a matter committed to the discretion of the trial court and then to review by the Appellate Division, and I frankly see no other way the issue could have been reasonably resolved.

## IV. Ineffective Assistance of Trial Counsel

Finally, petitioner asserts that his counsel was ineffective for not seeking to redact the portion of his video statement where he acknowledged that he had possession of guns, a large amount of cash, and jewelry in Pennsylvania. He also complained that defense counsel should have objected to the prosecutor's questions on these topics during cross examination. The Appellate Division summarily rejected this claim on the merits. Rodriguez, 132 A.D.3d at 784, 17 N.Y.S.3d at 756. My review is therefore constrained by the deferential standard under the AEDPA as discussed above.

Petitioner's burden is thus doubly difficult. He not only needs to meet the AEDPA standard, but a petitioner claiming ineffective assistance of counsel must prove two things. First, petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" according to "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). In other words, petitioner "must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see

16

also Missouri v. Frye, 566 U.S. 133, 148 (2012) ("[W]here a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty." (internal quotation marks)). Because this Court only considers whether the state court's determination was unreasonable, and because there is a strong presumption that counsel's assistance was effective, the standard of judicial review applicable to ineffective assistance of counsel claims under § 2254(d) is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

On the issue of objective reasonableness, as the District Attorney argued to the Appellate Division, petitioner's trial counsel could have had several reasons for not seeking redaction of the video. In fact, he actually made use of petitioner's unrelated misconduct in his summation, telling the jury that petitioner could be prosecuted for drugs, guns, or tax evasion, but not murder. Do I think that would be a great strategy? Probably not. But I also think it would be well within the doubly-deferential standard of review that I must apply. Similarly, with regard to not objecting to cross examination on these issues, it is always a trial lawyer's choice as to whether to object, thereby highlighting the testimony – regardless of whether the objection is sustained or not – or to just let it pass through without comment because highlighting it may make it worse. I cannot second guess that decision based on the narrow standard of federal habeas review.

Even if petitioner could demonstrate objective unreasonableness, he comes nowhere near demonstrating the degree of prejudice required for habeas corpus relief. A review of this record indicates clearly that petitioner was convicted because the jury believed Sanders's testimony at trial and not petitioner's, because petitioner substantially admitted his participation in his pretrial

statements to the police, and because the jury had a video of petitioner buying the crucial laundry bag and sharing a hotel room at the JFK Inn with Sanders and Echevarria on the night of the fire. The fact that petitioner, by his own statements, admitted to legal problems with guns, jewelry, and cash in Pennsylvania does not a raise a "reasonable possibility," Davis, 135 S. Ct. at 2198, that the verdict would have been different without petitioner's statements and the prosecutor's cross examination on those statements.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability shall not issue as the petition presents no substantial questions. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                                                     U.S.D.J.

Dated: Brooklyn, New York
        June 29, 2017